IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAMONT HAGAN,
	Plaintiff
		v.                                       Case No. 3:11-cv-232-KRG-KAP
FRANCIS PIROZZOLA and LARRY
HOFFMAN,
	Defendants

## Report and Recommendation

### Recommendation

The remaining two defendants' motion for summary judgment, docket no. 23, should be granted.

### Report

Damont Hagan is an inmate in the state system. He alleges that he is serving 21-53 years for murder in Allegheny County, and his public record also indicates sentences for aggravated assault and aggravated harassment by a prisoner from the Court of Common Pleas of Luzerne County, and for aggravated harassment by a prisoner from the Court of Common Pleas of Fayette County. Hagan filed a complaint, docket no. 3, in October 2011, which I screened pursuant to 28 U.S.C.§ 1915A and found to allege three colorable claims of excessive use of force: by defendant Cousthy on September 4, 2010, docket no. 3 at ¶15, by defendants Hoffman and Pirazzola on April 18, 2011, docket no. 3 at ¶33, and by defendant McCullough on July 9, 2010, docket no. 3 at Count XII. Hagan filed objections to my recommendation that the balance of his complaints about being sanctioned for his use or abuse of the administrative grievance system be dismissed, and then filed an

amended complaint, docket no. 11, in December 2011. That pleading restated the claims against Hoffman and Pirazzola, docket no. 11 at ¶7, and McCullough, docket no. 11 at ¶11, omitted any claim against Cousthy, and in an affidavit mentioned another incident on November 8, 2011, involving one McDermott, docket no. 11 at Declaration of Damont Hagan, ¶16. In May 2012, Hagan filed a motion for permission to file a second amended complaint, docket no. 17, which I granted, docket no. 18, with the recommendation that the claims involving use of the grievance system again be dismissed. Hagan objected, docket no. 19.

The second amended complaint, docket no. 17-2, deletes the incident alleged with McCullough, and does not mention the incident alleged with McDermott. The remaining claim is that on April 18, 2011, defendant Hoffman placed Hagan in a bearhug and defendant Pirazzola punched Hagan in the face five times.

The defendants submit several pieces of evidence taken during the Pennsylvania Department of Corrections' internal investigation of Hagan's claim, docket no. 26-1, that indicate that Hagan fabricated the entire claim, and after being placed in his cell injured himself. Hagan correctly observes that his insistence that he was assaulted, and the July 8, 2012 affidavit of Earle Bedwell, docket no. 31-2 Exhibit B, make the cause of the injury a disputable issue of fact.

Summary judgment should nevertheless be entered on behalf of the defendants because, even accepting Hagan's account of events, the defendants' use of force was *de minimis*. The Supreme Court's latest relevant explanation of the Eighth Amendment's restrictions on use of force in a prison environment is Wilkins v. Gaddy, 559 U.S. 34 (2010). Wilkins, an inmate in North Carolina's state prison system, alleged that when he asked corrections officer Gaddy for a grievance form, Gaddy punched, kicked, kneed, and choked Wilkins, causing him a bruised heel, lower back pain, increased blood pressure, migraine headaches and dizziness, depression, panic attacks, and nightmares. The Fourth Circuit, following its precedent that focused on the severity of the injuries pleaded, dismissed the complaint. The Supreme Court held that the correct focus was on the severity of the use of force pleaded, regardless of the extent of injury. Wilkins v. Gaddy, 559 U.S. at 37-38. This is consistent with the approach adopted in this circuit, see e.g. Smith v. Mensinger, 293 F.3d 641 (3d Cir.2002). As the Supreme Court recognized in Wilkins v. Gaddy, and as the Third Circuit recognizes, the extent of injury allegedly suffered is one factor that objectively indicates how much force was applied, and that evidence may suggest whether the use of force could plausibly be regarded as either unnecessary or excessive. Wilkins v. Gaddy, 559 U.S. at 37-38, quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992). See also Smith v. Mensinger, 293 F.3d at

648-49, quoting Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir.2000)(factors to be considered include the need for use of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the threat to staff and other inmates perceived by the corrections officers, and any efforts made to temper the severity of the force used).

The reason that the *de minimis* use of force does not violate the Eighth Amendment is that:

There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically.

Reyes v. Chinnici, 54 Fed.Appx. 44, 48 (3d Cir.2002)(affirming summary judgment in favor of a corrections officer who, a jury could have found, punched a handcuffed prisoner.) The same principle applies in the parallel Fourth Amendment and Fourteenth Amendment contexts. In Burr v. Hasbrouck Heights Police Dept. 131 Fed.Appx. 799, 803 (3d Cir.2005), the Court of Appeals affirmed the grant of summary judgment rejecting a plaintiff's Fourth Amendment claim that police officers who arrested her used unreasonable force:

[E]ven viewing the facts and reasonable inferences therefrom in Burr's favor, it is fair to say that the Officers observed her running towards the door, and then, to prevent her from fleeing, grabbed her arms and put her on a stretcher. Id. As a result, her arms received some "small bruises." These facts do not suggest that the amount of force used was objectively unreasonable. Accordingly, [defendant officers] did not violate Burr's rights by forcibly restraining her.

4

A use of force is not malicious and sadistic simply because it is unnecessary in the sense that less forceful methods may also have sufficed. In <u>James v. York County Police Dept.</u>, 160 Fed.Appx. 126, 134 (3d Cir.2005), <u>cert. denied</u>, 549 U.S. 897 (2006), the Court of Appeals affirmed the grant of summary judgment to police officers because the plaintiff's lack of injury contradicted a Fourth Amendment claim of excessive force, despite the Court of Appeals' assumption that in the course of the routine arrest of plaintiff while he was picking up a suspected package of narcotics at a mailbox rental company, one police defendant **deliberately hit the plaintiff with a police van** to block his escape, and other officers threw him to the ground, roughly stepped on him, and handcuffed him. 160 Fed.Appx. at 129, 134.

Hagan describes the excessive use of force from his point of view: On April 18, 2011, Hagan was taken to the ISB building to be questioned about an allegation of abuse that he says occurred on March 16, 2011. Hagan attempted to give Pirazzola some paperwork so that Pirazzola could document what each page was, apparently rising from his chair in the process, and Pirazzola stated "sit the fuck down" and "threw [Hagan] in [his] chair." Hagan "tried to run to the door" and "as [he] got near the door" Hoffman grabbed him and Pirazzola punched him. The only other physical contact was Hoffman "slamming" Hagan against a wall. Physician Assistant Mark McConnell then came to Hagan's cell in the

RHU and observed his swollen right eye and bruised lip. docket no. 31-2 at 1, Exhibit A, <u>see also</u> Declaration by Damont Hagan, which states that Hoffman "placed" him against the wall, and relates that as Hagan "tried to leap for the door" he yelled "what are you doing?" in order to draw attention to himself because he was fearful of what Pirazzola might do. docket no. 31-2 at 3-4.

P.A. McConnell's medical report, which neither side questions, documents a "superficial abrasion" above Hagan's right eyebrow and a "superficial abrasion" of Hagan's inner right lower lip with "mild swelling." docket no. 31-2 at 6-7.

Disregarding defendants' averments that Hagan's injuries were self-inflicted after he was returned to his cell, and accepting Hagan's account, Hoffman and Pirazzola had an inmate who was attempting to leave the site of an interview and break for the door when they grabbed and punched Hagan to stop him. The punches imparted about as much force as one would expect from being hit by a soccer ball or bumped in a basketball game. Hagan was almost immediately provided with medical observation and treatment at the request of these officers. In sum, accepting Hagan's account, the <u>Brooks v. Kyler</u> factors break down like this: the defendant officers had an inmate with convictions for violent behavior in an agitated state trying to run from an investigatory interview out the door into the hall of a building where non-corrections officers (like the clerk typist who gave an affidavit for the defendants)

6

worked. Reasoning with Hagan as he was running out the door or some other nonphysical response would have been a futile attempt to stop Hagan. A trip or a tackle might have worked as well as a bearhug and a punch, but depending on the size of the interview room might also not have been effective as the method allegedly employed by the corrections officers. A trip or a tackle would also probably have inflicted the same minimal amount of injury on Hagan, if not more. In Hagan's account, the officers "tempered" their use of force by ceasing any use of force almost immediately. One could conclude that rather that five punches Pirazzola could have thrown four, or one, or even none, but it is inconceivable that anyone could conclude, even on Hagan's account, that Hoffman or Pirazzola were malicious or sadistic in their use of force. At most a juror believing Hagan's account and therefore rejecting all of the other witness statements could conclude that Pirazzola's response to Hagan's flight was more than the minimum necessary. But even an exaggerated response to a situation calling for the use of physical force, as <u>Reyes</u>, and <u>Burr</u>, and <u>James</u> hold, is a far cry from the allegedly unprovoked assault found actionable in <u>Wilkins v. Gaddy</u>. Summary judgment should be entered for the defendants.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: July 3, 2013

_____
Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

Damont Hagan DS-9488
S.C.I. Huntingdon
1100 Pike Street
Huntingdon, PA 16654